**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| CONNIE KINDLER, JOHN KINDLER, | |
| Plaintiffs, | |
| v. | CASE NO. 1:25-CV-151-HAB-ALT |
| WALMART INC, WAL-MART STORES EAST LP, WAL-MART REAL ESTATE BUSINESS TRUST, WAL-MART TRS LLC, WAL-MART STORES EAST LLC, | |
| Defendants. | |

## OPINION AND ORDER

Plaintiffs Connie Kindler ("Connie") and John Kindler are suing Defendants Walmart Inc., Wal-Mart Stores East LP, Wal-Mart Real Estate Business Trust, Wal-Mart TRS LLC, and Wal-Mart Stores East LLC (collectively "Walmart") for injuries Connie allegedly sustained after slipping on slush in the shopping cart area of Walmart's store in Huntington, Indiana. (ECF 1). They are pursuing claims for negligence and loss of consortium. (*Id.*).

Walmart now moves for summary judgment, arguing Plaintiffs have failed to establish the existence of a hazardous condition and thus cannot show Walmart breached its duty owed to Connie. (ECF 17, 18). Plaintiffs disagree. (ECF 22). The motion is now fully briefed and ripe for ruling. (ECF 17, 18, 22, 24). Because the evidence presents a genuine issue of material fact over whether a hazardous condition existed when Connie fell, the motion will be denied.

## BACKGROUND

On January 16, 2025, Plaintiffs went to the Walmart store in Huntington. (ECF 19, ¶ 1). It was snowing on that day. (ECF 18-1, at 2:2). As a result, customers tracked some moisture into the store, including in the shopping cart area where customers enter. (ECF 19, ¶ 8). Surveillance

video from the store's entrance shows this. (ECF 20). The footage begins roughly thirty minutes before Connie entered the store, and wet spots appear on several occasions in that timeframe. (*Id.*, at 0:00–29:50). At 2:18 p.m., a woman with a shopping cart entered the store. (*Id.*, at 1:15). Both her and the cart left visible wet trails. (*Id.*). Another customer left wet shoeprints only one minute later. (*Id.*, at 2:49). Yet another does the same only two minutes after that. (*Id.*, at 4:25). In all, at least ten individuals left visible wet spots of varying sizes in the Walmart entryway next to the shopping cart area in the thirty minutes before Connie arrived.[1] (*Id.*, at 1:15–29:50). One customer who entered area at 2:33 p.m. looked back at a spot she had just walked past after her left shoe appeared to slide slightly. (*Id.*, at 17:01–08). Two Walmart employees entered that area during that time who could observe the conditions. (*Id.*, at 5:20, 7:50). Neither acted, and more than twenty minutes passed between their presence and Connie's arrival. (*Id.*)

The video shows Connie being dropped off at the store's entrance at 2:46 p.m. (*Id.*, at 29:50-30:10). After entering the store, Connie turned and walked to the shopping cart area. (*Id.*). That area is to the side of the entryway, outside the video's frame. When Connie approached the shopping carts, she says she noticed some "slush" on the ground and attempted to walk around it. (ECF 18-1, at 5:13–6:6). Despite her efforts, Connie fell. (ECF 19, ¶ 4). She alleges that she fell because she slipped on slush. (ECF 18-1, at 2:25–3:7). Although she said she slipped on slush on the ground, Connie gave inconsistent accounts of the conditions prior to her fall. For instance, she said she could not recall how much slush there was in the area. (*Id.*, at 6:5–6). And at another point, she said she did not see any snow, ice, or water before she fell. (*Id.*, at 4:12–18). Walmart disputes there was any slush. (ECF 19, ¶¶ 5, 8). EMTs arrived roughly ten minutes after Connie fell. (ECF

---

[1] This figure accounts for all wet marks from which the Court can identify a clear source. The Court notes that some additional wet spots appear that may or may not have come from different customers than the Court identifies.

20, at 41:00). At that point, they placed Connie on a stretcher and transported her to the hospital. (*Id.*, at 49:30). About twenty minutes passed between Connie's fall and when the EMTs stretchered her out of Walmart.

After Connie left in the ambulance, a Walmart employee investigated the scene and compiled a Customer Incident Report ("Report"). (ECF 18-2, at 4–10). The Report explained that Connie "was gathering a shopping cart then lost balance and fell while turning around." (*Id.*, at 4). The Report does not specify whether this is the employee's assessment or Connie's description of events. (*Id.*). The Report included photographs of the shopping cart area taken after Connie left in the ambulance. (*Id.*, at 6–10). How long after is unclear. The photographs show several wet spots, most of which had dried out to varying degrees:









(*Id.*, at 6–9).

Walmart's attorneys presented these photos to Connie in her deposition. (ECF 18-1, at 6). When asked if there was something besides the wet footprints when she walked in, she replied: "Well, there was something wet there." (*Id.*, at 7:2–5). When asked why she would say that, she replied: "Well, because I slipped on it. . . . I slipped on something." (*Id.*, at 7:6–11).

## **LEGAL STANDARD**

Summary judgment is appropriate if a moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, evidence must be viewed in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014). Put another way, a court will only grant summary judgment "if, on the evidence presented, no reasonable juror could return a verdict in [the non-moving party's] favor." *Sorensen*

*v. WD–40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015). When the non-moving party presents admissible evidence to a court that creates a genuine issue of material fact, that court must deny summary judgment. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). Courts do not supersede the jury's role in making credibility determinations and weighing the evidence. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

## DISCUSSION

Plaintiffs' claims sound in negligence. To prove negligence under Indiana law, a plaintiff must show that there was a "(1) duty owed to plaintiff by defendant; (2) [a] breach of duty by allowing conduct to fall below the applicable standard of care; and (3) [a] compensable injury proximately caused by defendant's breach of duty." *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016). In the premises liability context, "the nature and extent of a landowner's duty to persons coming on the property is defined by the visitor's status as an invitee, a licensee, or a trespasser." *Harradon v. Schlamadinger*, 913 N.E.2d 297, 300 (Ind. Ct. App. 2009) (citing *Rhoades v. Heritage Inv., LLC*, 839 N.E.2d 788, 791 (Ind. Ct. App. 2005)). The parties agree that Connie was a business invitee when she fell, so Walmart owed her a duty to exercise reasonable care for her protection while she was on the premises. *See, e.g.*, *Rogers v. Martin*, 63 N.E.3d 316, 322 (Ind. 2016).

Indiana has adopted the Restatement (Second) of Torts when it comes to a landowner's duty to a business invitee. *Podemski v. Praxair, Inc.,* 87 N.E.3d 540, 547 (Ind. Ct. App. 2017). Under that standard, landowners are "subject to liability for physical harm caused to his invitees by a condition on the land" if elements demonstrating knowledge and a failure to exercise reasonable care are proven. *Id.* (quoting Restatement (Second) of Torts § 343).

Walmart argues that the Court need not even assess those elements. Instead, it contends that summary judgment must be granted because no evidence supports the existence of a hazardous condition at the time Connie fell. The Court disagrees.

The surveillance video shows water and wet shoeprints on the floor near where Connie fell. The photographs of the shopping cart area where Connie fell, taken shortly after her fall, similarly show water and shoeprints tracked on the floor. And Connie testified in her deposition, albeit inconsistently at times, that she fell on slush or because of wet conditions on the floor. These facts and the reasonable inferences from them could lead a reasonable jury to conclude Connie slipped because of a hazardous condition on the floor.

The cases Walmart relies on do not change this conclusion. Of course, the "mere allegation of a fall is insufficient to establish negligence, and negligence cannot be inferred from the mere fact of a fall." *Lowrey v. SCI Funeral Servs., Inc.*, 163 N.E.3d 857, 861 (Ind. Ct. App. 2021) (quoting *Taylor v. Cmty. Hosps., Inc.*, 949 N.E.2d 361, 364 (Ind. Ct. App. 2011)). But the case Walmart points to as an analogue— *Higgins v. Ameristar Casino E. Chicago, LLC*, No. 2:21-CV-206-TLS-JEM, 2023 WL 2756209 (N.D. Ind. Apr. 3, 2023)—does not provide an apples-to-apples comparison. In *Higgins*, the district court granted summary judgment because the plaintiff alleged that he tripped on a defective sidewalk, but offered no evidence other than the fact he fell to show the sidewalk was defective. *Id.* at *1–*2. Put differently, *Higgins* demonstrates that *post hoc* rationalization cannot sustain a negligence claim.

That fallacy does not apply to the facts here. Connie's deposition testimony may not be altogether consistent (which counsel will surely point out on cross-examination at trial), but she at least alleges she slipped on *something* wet. Whatever form that "something wet" took, her testimony along with the other evidence before the Court is sufficient to raise a question of fact

over whether it was there at the time Connie fell. To survive Walmart's present motion for summary judgment, Plaintiffs need only show that water, snow, ice, slush, or some other form of slippery wet spot existed when Connie fell. Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes they have done that much.[2]

### **CONCLUSION**

Walmart's motion for summary judgment (ECF 17) is DENIED.

**SO ORDERED** on August 10, 2026.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

---

[2] Because John Kindler's derivative claim for loss of consortium entirely hinges on Connie's negligence claim, *Miller v. Cent. Ind. Cmty. Found., Inc.,* 11 N.E.3d 944, 963 (Ind. Ct. App. 2014) (citations omitted), that claim too survives summary judgment.